**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| V. | ) | |
| | ) | Case No. 2:22-CR-11-001 |
| **THOMAS J. LIDDLE**, | ) | |
| | ) | |
| Defendant. | ) | |

**THOMAS J. LIDDLE'S OBJECTION TO PRESENTENCE**
**INVESTIGATION REPORT and POSITION ON SENTENCING**

The defendant, Thomas J. Liddle, by counsel, has the following objection to the

Presentence Investigation Report (Doc. 43) (hereinafter "PIR").

I.     OBJECTION

Liddle objects to the 4-level enhancement under **Specific Offense**

**Characteristics** because the firearm was not used or possessed "in connection with

another felony offense."  PIR at 6 (**Specific Offense Characteristics** ¶ 16).  The

relevant section of the USSG states as follows:

> If the defendant —
>
> *          *          *
>
> (B) used or possessed any firearm or ammunition in connection with another
> felony offense; or possessed or transferred any firearm or ammunition with
> knowledge, intent, or reason to believe that it would be used or possessed in
> connection with another felony offense, increase by 4 levels.

USSG §2K2.1(b)(6)(B).

The application note to the enhancement explains:

> 14. Application of Subsections (b)(6)(B) and (c)(1).—
>
> (A) **In General.**—Subsections (b)(6)(B) and (c)(1) apply if
> the firearm or ammunition facilitated, or had the potential of
> facilitating, another felony offense or another offense,

respectively.  \*\*\*

(B) **Application When Other Offense is Burglary or Drug Offense.**—Subsections (b)(6)(B) and (c)(1) apply (i) in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary; and (ii) in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.  In these cases, application of subsections (b)(6)(B) … is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively.

*Id.* note 14.

The Fourth Circuit discussed this enhancement at length in *United States v. Jenkins*, 566 F.3d 160 (4th Cir. 2009).  The Court said the enhancement should be applied where "the firearm 'ha[d] some purpose or effect' with respect to the other offense" *United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003) or "the firearm 'was present for protection or to embolden the actor.'"  *Id.* at 162 (quoting *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000)).  Conversely, the enhancement should not be applied "If the firearm was present due to mere 'accident or coincidence.'" *Id.* at 163 (quoting *Blount*, 337 F.3d at 411).

Here, the facts support the conclusion that the firearm was present due to mere accident or coincidence.  Attached as Exhibit 1 to this position paper is an Affidavit from Kari Wiggins.  Ms. Wiggins was/is a girlfriend of Mr. Liddle.  Ex. 1 ¶ 3.  In the affidavit, Ms. Wiggins states that the firearm recovered from Mr. Liddle, the Walther Creed 9 mm, belonged to her.  Ex. 1 ¶¶ 5-6.  In support of her statement, she has provided pictures she had taken previously of the firearm.  *Id.* ¶ 7 (Exs. 1-5).  Ms. Wiggins states that on the day before Mr. Liddle was arrested, she was having a medical emergency and Mr.

Liddle took her to the hospital.[1]  Before they left for the hospital, she grabbed her purse, which contained the firearm.  *Id.* ¶ 5.  She left her purse along with the firearm in Mr. Liddle's car when she checked into the hospital.  *Id.* ¶ 8.  The next morning is when the police discovered Mr. Liddle asleep in his car with the firearm in his pocket.  Also noteworthy, it was Ms. Wiggins who called the police on Mr. Liddle.  *Id.* ¶ 11.

On these facts, the Court should find that the firearm was "present due to mere 'accident or coincidence'" and decline to apply the enhancement.  *See United States v. Grimaldo*, 984 F.3d 876, 881 (9th Cir. 2021) ("The district court needed to make factual findings connecting Grimaldo's possession of a firearm with his likelihood of owning illegal narcotics.").

### 2-Level Enhancement for Large Capacity Magazine

Liddle has withdrawn his objection to the 2-level increase to his base offense level, because the offense involved a "(i) semiautomatic firearm that is capable of accepting a large capacity magazine."  PIR at 6 (Base Offense Level ¶ 15).  However, his attorney wishes to point out the arbitrariness of this 2-level increase in his base offense level.

First, this is not a case in which the presence of an extended magazine was obvious.  By that, counsel means that it did not involve what a person commonly thinks of when s/he hears the term extended or high-capacity magazine:

---

[1] Wiggins has provided counsel with screenshots related to her stay in the hospital on December 4, 2021, which he will proffer to the Court at sentencing.  The screenshots contain personal medical information so counsel will not file them with this memorandum.



The pictures above are the typical images of an extended capacity magazine.

That was not this case.  Rather, from outwards appearances, it was impossible to tell that the Walther Creed 9mm possessed by Liddle contained a magazine that could hold more than fifteen rounds, the dividing line for whether a magazine qualifies as an extended magazine under the USSG.  Indeed, Walther Arms makes two versions of the Creed 9mm that are identical except one holds ten rounds and the other holds sixteen rounds.  Attached as Exhibit 2 are downloads from the Waltherarmsusa.com website detailing these two firearms.  The two versions look alike, have the same dimensions, and weigh the same.

In this case, there is nothing to suggest that Liddle had any knowledge of the Walter Creed 9mm's firearm's magazine capacity when he possessed the firearm.  In addition, there was nothing about the appearance of the firearm that would have alerted him to the fact that it could accept or in fact did contain a high-capacity magazine.  Liddle asks the Court to consider these facts when it sentences him.

## POSITION ON SENTENCING

In accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as the Sentencing Procedures Order (ECF No. 39), the Defendant, Thomas J. Liddle, by counsel, states that he has reviewed the Probation Officer's Presentence Investigation Report ("PIR") and the following sets forth his position on sentencing:

As this Court is well-aware, the Sentencing Guidelines are no longer mandatory, but advisory.  In *Gall v. United States,* 552 U.S. 38, 47 (2007), the Supreme Court rejected:

> an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. [The Court] also reject[ed] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

*Id.* at 47.  Rather, the Court is required to consider the sentencing factors set out in 18 U.S.C. § 3553 and the other factors contained elsewhere in the U.S. Sentencing Guidelines in fashioning the appropriate sentence.

The section 3553 factors are as follows:

**(a) Factors To Be Considered in Imposing a Sentence.** — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed —
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for —
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —
>>> *        *        *
> (5) any pertinent policy statement —
>> (A) issued by the Sentencing Commission . . . ; …
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

1)      **Nature and Circumstances of the Offense**

The facts are straightforward and can be viewed in the officer's body worn camera footage.  Liddle was asleep in the driver's seat of his car with the firearm in his right front pocket.  As the evidence submitted above would suggest, the firearm did not belong to Liddle and he had it in his possession for less than twenty-four hours.  The firearm has not been linked or connected to any other crimes.

1)      **The History and Characteristics of the Defendant**

The Presentence Report correctly summarizes Liddle's background.  He is 28-years-old, and never married.  He has a young child from a consensual relationship.  His work history could be best be described as spotty, primarily because he has been incarcerated for the majority of his adult life.  When he was employed, he worked as a chef and bar back at Dockside Bar and Grill in Norfolk and as a laborer for a concrete company.  PIR ¶ 71, ¶ 73.

In simplest terms, Liddle is a drug addict, who has never been able to solve his addiction.  In this case, Liddle was caught after having consumed drugs in his car.  The body-worn camera footage shows the police retrieving multiple smoking devices and Liddle can be heard complaining that he is thirsty and feeling the after effects of the drug use.  As part of any sentence, some form of substance abuse treatment should be required.  Finally, Liddle has a criminal history of Category IV, which stems primarily from statutory burglary and robbery charges in 2013 when he was 19-years-old.

**2)**     <u>**The Need for the Sentence Imposed to**</u>

(A)     <u>Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.</u>

Clearly, possession of a firearm by a convicted felon is always a serious offense. Normally that charge is not filed as a standalone charge but is accompanied by other charges that are more violent in nature, for example, the use of a firearm in the commission of a robbery or possession of a firearm in connection with a drug trafficking offense. Here, there were no serious charges that accompanied the firearm charge. There was no injury or even threatened injury to another person. The firearm was not used in the commission of a crime nor was there any plan to use the firearm in the commission of a crime. On the contrary, there is evidence – Wiggins's affidavit – that the firearm belonged to Wiggins and Liddle only possessed the firearm for a limited amount of time, less than 24 hours. All of these factors suggest that the possession of a firearm charge is less serious than a typical firearm-by-felon charge.

(B)     To Afford Adequate Deterrence

In this case, logic suggests any substantial punishment the Court imposes on Liddle will deter others who are tempted to engage in similar conduct, though counsel could find no empirical evidence to support that assertion. As far as individual deterrence, despite having been charged with multiple offenses, even a sentence at the low end of the guideline range will have a substantial deterrent effect.

(C) To Protect the Public From Further Crimes of the Defendant

A sentence of forty-two months would be more than sufficient to protect the general public from further crimes by Liddle. Again, Liddle's version of the firearm-by-felon crime is the least serious version of such an offense one is likely to encounter. It

does not call for or justify a lengthy sentence.

    (D) TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.

Liddle would benefit substantially from a facility where he could learn a trade. Additionally, Liddle has longstanding problems with substance abuse. He would also benefit from a facility that provides additional treatment and options for those with substance abuse problems.

### 3) The Kinds of Sentences Available

In this case, counsel is aware of no alternatives to incarceration. Counsel would point out that Liddle will be on supervised release for up to three years. In addition, as a result of this conviction, he will be charged with having violated his probation in Norfolk on his statutory burglary and robbery convictions and will almost certainly receive additional penitentiary time for that violation.

### 4) The Kinds of Sentence and the Sentencing Range Established for this Offense

Here, the maximum sentence under the relevant statute (18 U.S.C. §§ 922(g)(1) and 924(a)(2)) is ten years. Liddle is asking for a sentence of forty-two months. If the Court finds that the 4-level enhancement does not apply, Liddle is asking the Court to depart downward an additional 2-levels because of his argument regarding the extended capacity magazine. That would result in a sentencing range of 37-46 months. Liddle is requesting a sentence within that range.

### 5) Pertinent Policy Statement

Liddle is aware of no policy statements issued by the Sentencing Commission pertinent to this particular offense.

**6)**    <u>**Unwanted Sentencing Disparities**</u>

This is not a relevant factor as there are no co-defendants charged with the same offense or who have the same criminal history.

**7)**    <u>**Restitution**</u>

Restitution does not apply to this offense.

**8)**    <u>**Conclusion**</u>

As noted above, if the Court rules in favor of Liddle on the 4-level enhancement, Liddle's sentencing guideline range will be 46 months to 57 months.  However, Liddle is asking the Court to depart downward and treat his Base Offense Level as 20 as opposed to a 22 because of the facts he pointed out regarding the 2-level increase for an extended magazine.  If the Court departed downward, Liddle's Offense Level would be a 17, and his recommended sentencing range would be 37 to 46 months.  Liddle is asking for a sentence of 42 months.  That sentence would be sufficient but not greater than necessary to comply with the § 3553(a) sentencing factors.

Respectfully submitted,

**THOMAS J. LIDDLE**

By: _____/s/_____
Christian L. Connell (Bar No. 35009)
Attorney for Defendant Thomas J. Liddle
CHRISTIAN L. CONNELL, P.C.
555 East Main Street, Suite 1102
Norfolk, Virginia 23510
757.533.6500
757.299.4770 (fax)
Email: christian.connell@outlook.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2022, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send an electronic notification (NEF) of such filing to all counsel of record.


By: _____ **/s/** _____
Christian L. Connell
Bar No. 35009
Attorney for Defendant Thomas J. Liddle
CHRISTIAN L. CONNELL, P.C.
555 East Main Street, Suite 1102
Norfolk, Virginia 23510
757.533.6500
757.299.4770 (fax)
Email: christian.connell@outlook.com